[No. 35047-5-II.   Division Two.   April 8, 2008.]

THE STATE OF WASHINGTON, *Petitioner*, v. DON PATRICK
DODSON, *Respondent*.

*Gerald A. Horne, Prosecuting Attorney,* and *Michelle Hyer, Deputy,* for petitioner.

*Theodore C. Rogge* (of *Rogge Law Office*), for respondent.

¶1  ARMSTRONG, J. — The state of Washington appeals the superior court's decision on a RALJ appeal, dismissing, for lack of jurisdiction, Don Dodson's district court convictions of driving under the influence and reckless driving. The State also challenges the superior court's award of fees and costs under RALJ 9.3(a). We reverse the superior court's order remanding and dismissing Dodson's convictions, vacate its award of fees and costs, and reinstate the convictions.

## FACTS

¶2  Sergeant Gregory Mason, a staff sergeant with the military police at Fort Lewis, was supervising an early morning traffic stop at 41st Division Drive, directly underneath Interstate 5 (I-5) and near the base of an entrance ramp, when he noticed a car driving the wrong way down the entrance ramp. Mason ran toward the car while yelling a warning to the other military police officers at the scene. After he and another officer shined their flashlights at the car, it stopped.

¶3 When Mason contacted the driver, Don Dodson, he noticed that Dodson's speech was slurred and that Dodson was confused. Mason detained Dodson and called for the Washington State Patrol.

¶4 Washington State Patrol Sergeant Woodrow Perkins was driving on 41st Division Drive when he noticed several military police vehicles on the outside lane. Perkins then saw Dodson's car parked facing the wrong direction on the on-ramp to southbound I-5. As he approached, Mason flagged him down. Perkins ultimately arrested Dodson for driving under the influence (DUI), and the State later charged Dodson in district court with the additional offense of reckless driving.

¶5 Dodson filed a pretrial motion to dismiss, in which he challenged the legality of his seizure and arrest. During the hearing on that motion, Mason testified that he contacted the Washington State Patrol after stopping Dodson based on a memorandum of understanding between Fort Lewis and the state patrol, as well as orders that "anything involving . . . the freeway is best left to the Washington State Patrol." Report of Proceedings (Feb. 23, 2004) at 32, 35.

¶6 Lee Burnett, a real estate officer at Fort Lewis, testified that the incident occurred in an area of concurrent federal and state jurisdiction. Burnett explained that after the State granted the federal government exclusive jurisdiction over the Fort Lewis property, the secretary of the Army retroceded jurisdiction over the I-5 segment of that property to the State when the interstate was constructed. Burnett produced a map indicating that there was concurrent jurisdiction over the I-5 interchange and the on- and off-ramps that crossed Fort Lewis.

¶7 The trial court denied Dodson's motion to dismiss, finding that Mason detained him under the military purpose exception of the Posse Comitatus Act, 18 U.S.C.

§ 1385.[1] That exception allows military personnel to act on off-post criminal activity that adversely affects the welfare of persons and the efficiency of operations on post, and the trial court found both concerns present. The trial court concluded that because the area in which the arrest occurred was one of concurrent jurisdiction, it had authority to hear the matter.

¶8 During trial, Mason and Perkins testified as cited above. After describing where he stopped Dodson, Mason added that he turned the matter over to the state patrol because he was told it could operate within that jurisdiction. Perkins testified that he had authority to handle collisions on 41st Division Drive and that the Washington State Patrol has concurrent jurisdiction in that area.

¶9 A jury found Dodson guilty as charged, and he appealed to the superior court. Dodson argued on appeal that the district court lacked jurisdiction over his case, and the State responded that it had shown that the incident occurred in an area of concurrent jurisdiction. The superior court ruled that there was no concurrent jurisdiction between the federal and state governments as a matter of law.

¶10 With its motion for reconsideration, the State submitted documents showing that the federal government had retroceded jurisdiction to Washington over the segment of I-5 that crosses Fort Lewis. The State also argued that the district court had jurisdiction because an essential element of the DUI charge occurred in an area of exclusive state jurisdiction. The superior court again held that there was no concurrent jurisdiction as a matter of law and awarded costs and fees to Dodson under RALJ 9.3. In written findings of fact and conclusions of law, the superior court stated that the district court lacked jurisdiction to hear and try Dodson's case, and it ordered a remand for dismissal of his convictions with prejudice. We granted the State's motion for discretionary review.

---

[1] This enactment generally prohibits military involvement in civilian law enforcement. *United States v. Chae Won Chon*, 210 F.3d 990, 993 (9th Cir. 2000).

ANALYSIS

¶11 At issue is whether the district court had jurisdiction to hear Dodson's case. The State contends that the district court properly exercised jurisdiction over Dodson because an essential element of his offense was committed in Pierce County and because his arrest occurred in an area of concurrent federal and state jurisdiction.

A.  Essential Element Test

¶12 Jurisdiction is the power of a court to hear and determine a case. *State v. Lane*, 112 Wn.2d 464, 468, 771 P.2d 1150 (1989). A court's jurisdiction over a case may be either exclusive or concurrent with that of other courts. *Lane*, 112 Wn.2d at 468. Jurisdiction is a question of law that we review de novo. *State v. Leffingwell*, 106 Wn. App. 835, 841, 25 P.3d 484 (2001). Where it is the only question for review, the parties' respective burdens to establish or contest jurisdiction are not at issue. *State v. Squally*, 132 Wn.2d 333, 340, 937 P.2d 1069 (1997).

¶13 Dodson argued successfully below that the district court had no jurisdiction to hear his case because he was stopped on Fort Lewis, which is an area of exclusive federal jurisdiction. *See In re Pers. Restraint of Teddington*, 116 Wn.2d 761, 773, 808 P.2d 156 (1991) (Fort Lewis is an area of exclusive federal jurisdiction ceded to the United States government by the state of Washington); *Lane*, 112 Wn.2d at 470 (State has ceded exclusive jurisdiction over the Fort Lewis property to the United States). But where elements of a crime are committed in different jurisdictions, any state where an essential part of the crime has been committed may take jurisdiction. *Lane*, 112 Wn.2d at 470; *see also Leonard v. United States*, 500 F.2d 673, 674 (5th Cir. 1974) (sovereign has jurisdiction to try an offense where only part of that offense has been committed within its boundaries).

¶14 Washington's criminal jurisdiction statute provides that "[a] person who commits in the state any crime,

in whole or in part," is liable to punishment. RCW 9A.04.030(1). An offense is committed "in part" in Washington when an essential element of the offense has been committed in the state. *Lane*, 112 Wn.2d at 471; *State v. Daniels*, 104 Wn. App. 271, 275, 16 P.3d 650 (2001).

¶15 Dodson was convicted of DUI and reckless driving.[2] RCW 46.61.502, .500. Driving is an essential element of both offenses. *See State v. Beck*, 42 Wn. App. 12, 15, 707 P.2d 1380 (1985) (to be guilty of driving while intoxicated, the driver must be in physical control and must have had the car in motion at the time in question); *State v. Potter*, 31 Wn. App. 883, 887-88, 645 P.2d 60 (1982) (reckless driving can arise only out of the operation of a vehicle). To have driven the wrong way down the I-5 entrance ramp, Dodson had to drive on I-5, which is without dispute within the State's jurisdiction. Therefore, we agree with the State that the district court had jurisdiction to hear Dodson's case because an essential element of both offenses was committed within an area of state jurisdiction.

¶16 The State also contends that the district court had jurisdiction because Dodson's arrest occurred in an area of concurrent state and federal jurisdiction.

## B. Concurrent Jurisdiction

¶17 Territory subject to concurrent jurisdiction comes within the plenary authority of both the federal and state governments, permitting both to exercise police powers. *Campbell v. Commonwealth*, 39 Va. App. 180, 571 S.E.2d 906, 910 (2002) (citing *North Dakota v. United States*, 495 U.S. 423, 429 n.2, 110 S. Ct. 1986, 109 L. Ed. 2d 420 (1990)). During the pretrial hearing, the district court heard testimony that concurrent jurisdiction existed in the area where Dodson was stopped and arrested. Sergeant Mason testified that a written agreement, as well as military orders, led him to understand that incidents involving

---

[2] The State addresses only Dodson's DUI conviction, but the district court record indicates that the jury also found him guilty of reckless driving.

the interstate were best left to the state patrol. A Fort Lewis real estate officer testified that he understood that the federal government had retroceded jurisdiction over the segment of I-5 that crosses Fort Lewis, and he based this testimony on his knowledge and on a map that the State introduced, as well as a letter from the secretary of the Army that the State did not introduce.

¶18 When the superior court held on appeal that concurrent jurisdiction did not exist as a matter of law, the State submitted documents from the Army Corps of Engineers for the court's consideration. One document was a 1985 letter from the secretary of the Army to the governor of Washington, noting that the United States had granted the State an easement for I-5 as it crosses Fort Lewis. The letter observed that while the United States held exclusive jurisdiction over that easement area, it would relinquish and retrocede to the State "such jurisdiction as necessary to enable the State of Washington and the United States to share responsibility for traffic control and law enforcement and otherwise exercise concurrent legislative jurisdiction thereover." Clerk's Papers at 102; *see United States v. Grant,* 318 F. Supp. 2d 1042, 1045 (D. Mont. 2004) ("jurisdiction" is the power to make rules and regulations or to legislate).

¶19 As authority for the retrocession of jurisdiction, the letter referred to 40 U.S.C. section 319 and 10 U.S.C. section 2683. Now codified as 40 U.S.C. section 1314, section 319 permitted the federal government to grant states an easement over property held by the United States and also allowed the federal government to relinquish legislative jurisdiction over the easement area. Former 40 U.S.C. § 319 (2002). Section 2683 permits the secretary of the Army to relinquish legislative jurisdiction over lands within his control to a state. *See In re Air Crash Disaster,* 660 F. Supp. 1202, 1209 n.8 (W.D. Ky. 1987) (citing 10 U.S.C. section 2683 and a letter from the secretary of the Army as authority for the United States' recession of power to Kentucky to serve process on and within Fort Campbell).

¶20  We are persuaded that concurrent jurisdiction exists over that segment of I-5 crossing Fort Lewis and that the interstate's entrance ramps are included within that area of concurrent jurisdiction. The superior court erred in holding that concurrent jurisdiction did not exist as a matter of law and in remanding for dismissal of Dodson's convictions.

¶21  Given this conclusion, it follows that the superior court also erred in granting Dodson costs and fees under RALJ 9.3(a), which allows the prevailing party in a RALJ appeal to recover costs. *See State v. Hendrickson*, 140 Wn. App. 913, 924, 168 P.3d 421 (2007) (vacating award of fees and costs to Hendrickson because superior court erred in dismissing his district court conviction). We therefore reverse the superior court's order requiring a remand and dismissal, and we remand to the district court with directions to reinstate Dodson's convictions and sentence. We also vacate the superior court's award of costs and fees under RALJ 9.3(a).

HOUGHTON, C.J., and HUNT, J., concur.